Filed 2/1/22  P. v. Callender CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>ARTHUR WILLIAM ROBERT CALLENDER,<br><br>    Defendant and Appellant. | G059527<br><br>(Super. Ct. No. 16NF2748)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Andre Manssourian, Judge.  Affirmed.

Thomas E. Robertson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Genevieve Herbert, Deputy Attorneys General.

\*          \*          \*

A jury found appellant Arthur William Robert Callender guilty of two counts of sexual intercourse with a child 10 years of age or younger, in violation of Penal Code section 288.7, subdivision (a), and he was sentenced to 50 years to life in state prison. He appeals, contending the trial court prejudicially erred in denying his pretrial motion to exclude his confession of sexual penetration, which he argued was obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). As discussed below, because appellant's statements were not made during a custodial interrogation, we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Motion to Exclude PreMirandized Statements*

Before trial, appellant moved to exclude statements he made to law enforcement before he was provided *Miranda* advisements. He argued he made the statements in a custodial setting because he did not believe he could leave after the officers had shown him their badges and taken him "outside the comfort of the home onto the patio." The District Attorney argued there was no custodial interrogation because the officers were friendly and nonconfrontational, told appellant he was free to leave multiple times, and never restricted his movement. The trial court denied the motion, concluding appellant was not in custody during the interrogation.

B. *Prosecution Evidence*

The victim's mother testified that, in May 2016, she was living together with her husband, their three children, her in-laws, and several family relatives, including her sister-in-law. During that time, appellant had been dating her sister-in-law for almost three years. Appellant regularly visited and became so close to the family that they trusted him to babysit her daughter, the two-year-old victim, on two occasions in August 2016.

In October 2016, Special Agent Kelly Nowak from Homeland Security Investigations and Investigator Sandra Longnecker from the Orange County Sheriff's Department were assigned to the Orange County Child Exploitation Task Force, which investigates online child exploitation crimes. Nowak contacted Longnecker after identifying the victim from explicit photographs posted on a Web site commonly used for trading illicit images. The e-mail address linked to the profile of the person who posted the photographs was associated with appellant's phone number.

Nowak and Longnecker, accompanied by two other agents, went to the victim's residence to positively identity her as the child in the photographs and ensure her safety. They did not know appellant would be present. Although the officers were armed, they wore casual attire. After interviewing members of the victim's family and ensuring the victim was safe, the officers interviewed appellant on the front porch.

The audio of appellant's recorded interview was admitted into evidence at trial. Longnecker and Nowak first introduced themselves as part of a child exploitation task force, and stated they had spoken with everyone else at the house and would like to speak with him. Appellant indicated he wanted to speak on the porch, instead of in the officers' vehicle. The officers informed appellant he was not under arrest, and then explained how photographs posted on a Web site were connected to an e-mail address and a phone number associated with appellant. They showed him some of the photographs; appellant claimed he did not recognize them. The officers asked appellant about his phone number and e-mail address, and after he provided the number and several e-mail addresses, they informed him that the phone number and third e-mail address were linked to the user account that posted the photographs. Appellant responded he had not used that e-mail address in a while.

Appellant had no explanation for photographs that were posted. Nowak reiterated appellant was not under arrest, and expressed her consternation that they did not have any other leads on who posted the photos. Appellant then admitted taking

3

photos of the victim but denied taking any explicit pictures. Appellant also denied having any knowledge of the Web site where the explicit pictures were posted.

Longnecker encouraged appellant to "tell the truth" even if he was scared, and appellant relayed he feared authority due to his prior experiences with Immigration and Customs Enforcement. He then acknowledged taking pictures and videos of the victim when she was not fully clothed. He repeatedly stated he did not post the pictures to the Web site, despite the account's connection to his e-mail and phone number. In response, Longnecker twice said, "Seriously?" Appellant then claimed he had not used the e-mail account connected to the Web site in over a year.

Longnecker asked appellant if she could look through his cell phone, including any application or the gallery, and he gave permission. While Nowak conversed with appellant about his family and his relationship with the victim's aunt, Longnecker searched through appellant's phone and discovered explicit videos of a penis and a female child's genitals dated August 16, 2016, and August 17, 2016. Longnecker showed appellant the videos and asked for an explanation. Appellant stated, "Yikes. That's very unsettling," and admitted it was his penis in the videos but denied ever posting the videos online. Longnecker asked, "So you did this to her?" Appellant replied, "Yes." He also admitted that he had sexually abused the victim prior to the two videos.

Longnecker told appellant she would be "right back," and she and Nowak stepped away from appellant to review the rest of the videos on his cell phone. Appellant then told one of the other officers present that he wanted to speak with Longnecker and Nowak. Longnecker asked appellant if he wished to speak away from the victim's family and appellant agreed to speak in Nowak's vehicle. Longnecker asked appellant whom he preferred to sit next to in the car, but appellant indicated he did not care. Longnecker told appellant, "I'm going to close the door is that okay? Okay. Yeah, the doors are

unlocked, and you're free to leave at any time. Okay? Make sense?" Appellant replied, "Yes."

Appellant initiated the conversation with the officers by asking if they had any comments, and Longnecker replied that he wanted to talk with them so "you can go first." Appellant then stated he had done "horrible things" and was "not proud of it." Nowak responded that they did not want to make him feel like a "bad guy," but there was an "arrow" pointing to him based on the "online stuff" and they only wanted honesty. Appellant replied, "I do think that I'm [an] honest person, even if it takes a while to get to honesty."

Longnecker asked appellant if he would allow them to look at his computer, and appellant agreed before stating there was a "hidden file where stuff was stored," but he had deleted it. Appellant stated he used the Web site to trade illicit photographs of children. He admitted that the profile belonged to him and that he posted the photographs of the victim on it. However, he claimed he never posted explicit photographs; "[t]hat was only for me."

The officers questioned appellant about his sexual abuse of the victim, and he stated that he was "turned on while . . . sexually playing with her," but "always felt terrible afterwards." Longnecker asked about the two explicit videos she previously had shown to appellant, and appellant stated he "barely managed to get the tip" of his penis into the victim's vagina.

Appellant agreed to provide the passwords for his e-mail accounts and signed a consent form permitting the officers to seize and search his computer and cell phone at his residence. Nowak drove appellant to his home where the officers seized the electronic devices.

Appellant was arrested, placed in handcuffs, and advised of his *Miranda* rights. After appellant affirmatively acknowledged that he understood those rights, he

5

again confessed to being in the videos with the victim and owning the account that posted the explicit photos.

B. *Defense Case*

Appellant testified in his own defense. He admitted sexually abusing the victim on August 16 and 17, 2016, when he was babysitting the child alone. He denied ever pushing his penis into the victim's genitalia, claiming he just rubbed his penis against her genitalia before ejaculating on her. Appellant also acknowledged recording both incidents.

On cross-examination, appellant acknowledged the videos showed the tip of his penis rubbing in between the victim's labia majora. He admitted the victim began crying "as [he was] rubbing and pressing [his penis] in her vagina."

II

DISCUSSION

In *Miranda*, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (*Miranda, supra*, 384 U.S. at p. 444.) "Absent 'custodial interrogation,' *Miranda* simply does not come into play." (*People v. Mickey* (1991) 54 Cal.3d 612, 648.) "On appeal, we accept the trial court's findings of historical fact if supported by substantial evidence but independently determine whether the interrogation was 'custodial.'" (*People v. Aguilera* (1996) 51 Cal.App.4th 1151, 1161 (*Aguilera*).) However, where the interrogation is recorded, as is the case here, "the facts surrounding the admission are undisputed and [also] subject to our independent review." (*People v. Torres* (2018) 25 Cal.App.5th 162, 173.)

The parties do not dispute the trial court's conclusion that the challenged statements were obtained during an interrogation; the sole issue on appeal is whether appellant was in custody when he was interrogated prior to the *Miranda* advisements

6

being given.  In determining whether a person is in custody for purposes of applying *Miranda*, the issue is whether, in light of the "'objective circumstances of the interrogation,' [citation], 'a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.'"  (*Howes v. Fields* (2012) 565 U.S. 499, 509 (*Howes*).)  A person's custody status can change during an interrogation.  (*People v. Saldana* (2018) 19 Cal.App.5th 432, 457 [although "the beginning of the interrogation was not custodial," by the time he confessed, "the circumstances had significantly changed"].)  Appellant contends that by the time he confessed to sexual penetration in Nowak's vehicle, the circumstances had significantly changed, and the interrogation had become custodial.

The "circumstances of the interrogation," (*Howes, supra*, 565 U.S. at p. 509), include:  "whether contact with law enforcement was initiated by the police or the person interrogated, and if by the police, whether the person voluntarily agreed to an interview; whether the express purpose of the interview was to question the person as a witness or a suspect; where the interview took place; whether police informed the person that he or she was under arrest or in custody; whether they informed the person that he or she was free to terminate the interview and leave at any time and/or whether the person's conduct indicated an awareness of such freedom; whether there were restrictions on the person's freedom of movement during the interview; how long the interrogation lasted; how many police officers participated; whether they dominated and controlled the course of the interrogation; whether they manifested a belief that the person was culpable and they had evidence to prove it; whether the police were aggressive, confrontational, and/or accusatory; whether the police used interrogation techniques to pressure the suspect; and whether the person was arrested at the end of the interrogation." (*Aguilera, supra*, 51 Cal.App.4th at p. 1162.)  "No one factor is dispositive.  Rather, we look at the interplay and combined effect of all the circumstances to determine whether on balance

they created a coercive atmosphere such that a reasonable person would have experienced a restraint tantamount to an arrest." (*Ibid.*)

Here, in the context of the challenged statements made in Nowak's vehicle, the factors weighing against a custodial finding predominate. First, it was appellant who initiated the questioning in Nowak's vehicle. Although law enforcement initiated contact with appellant, they had stopped questioning him after he admitted it was his penis in the two videos. It was appellant who stated he wanted to speak with Longnecker and Nowak. In addition, while in the vehicle, it was appellant who started the conversation about his prior admission.

Second, appellant voluntarily agreed to be interviewed in Nowak's vehicle because he wanted to speak away from the family of the victim.

Third, immediately before the interrogation in Nowak's vehicle, neither Longnecker nor Nowak informed appellant that he was under arrest or in custody. Moreover, minutes before on the front porch they expressly had informed appellant he was not under arrest.

Fourth, after entering the vehicle, Longnecker informed appellant that although she was closing the car's doors, the doors were unlocked and he was free to leave at any time. Appellant expressly acknowledged he understood those facts.

Fifth, there were no restrictions on appellant's movement. He was not handcuffed or restrained. Indeed, Longnecker asked appellant where he wanted to sit in the vehicle.

Sixth, the entire interrogation, including the interrogation on the front porch, lasted less than one hour.

Seventh, two officers participated in the interrogation in Nowak's vehicle, but it was appellant who specifically requested both officers.

Eighth, the officers were not aggressive, confrontational or accusatory.

8

Ninth, they did not use interrogation techniques to pressure the suspect. For example, they did not present false evidence.

Finally, appellant was not arrested at the end of the questioning in Nowak's vehicle.

In contrast, the factors weighing in favor of a custodial finding are mixed. While the express purpose of the entire interrogation was to question appellant as a suspect, the questioning in the vehicle was initiated by appellant to address any "comments" the officers might have about his prior admission that it was his penis in the videos. The officers did exert some control over the interrogation, for example directing the conversation to the explicit videos, but it was appellant who started the conversation by stating he had done horrible things that he was not proud of doing. Finally, by the time he was questioned in Nowak's vehicle, the officers "manifested a belief that [appellant] was culpable and they had evidence to prove it," (*Aguilera, supra*, 51 Cal.App.4th at p. 1162), but that belief and evidence was bolstered by appellant's own voluntary admission, made minutes before, that he was the person depicted in the explicit videos. Indeed, the evidence suggests appellant thought the officers' belief in his culpability was reasonable based on his express desire to address that belief by reinitiating conversation with the officers.

When all the above factors are viewed together, we conclude that under the totality of the circumstances the interrogation was not custodial. Accordingly, the trial court did not err in denying appellant's motion to suppress the challenged statements.

## III

### DISPOSITION

The judgment is affirmed.


ZELON, J.*

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.